IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISLYN BLACKWOOD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA, SUN LIFE FINANCIAL, COMMUNITY HOSPITALS OF CENTRAL CALIFORNIA dba COMMUNITY MEDICAL CENTERS EMPLOYEE BENEFIT PLAN and DOES 1-10,<br><br>　　　　Defendants. | CV F 08-1822 AWI DLB<br><br>MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION TO AUGMENT THE ADMINISTRATIVE RECORD<br><br>Doc. # 16 |

　　　　This is an action pursuant to the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. In this action, plaintiff Cislyn Blackwood ("Plaintiff") seeks to recover benefits she contends were wrongfully denied by defendants Sun Life Assurance Company of Canada ("Sun Life"), and plan administrator Community Medical Centers Employee Benefit Plan (collectively, "Defendants"). In the instant motion, Plaintiff seeks to augment the administrative record with medical records dating from the inception of her illness and with declarations of treating physicians and of personnel associated with her former employer and with her own declaration. For the reasons that follow, Plaintiff's motion to augment the administrative record will be granted in part and denied in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 22, 2008, the court issued a memorandum opinion and order dismissing the action in case number 08cv074 AWI GSA for failure to name a proper party defendant. The dismissal was with leave to amend. On October 30, 2008, Plaintiff filed the complaint in the instant case in Fresno County Superior Court. The case was removed to this court on November 25, 2008. The instant petition to augment the record was filed by Plaintiff on February 2, 2009. Sun Life filed its opposition to the motion to augment on February 16, 2009, and Plaintiff filed her reply on February 23, 2009. The court vacated the hearing date of March 2, 2009, and took the matter under submission as of that date.

Plaintiff was formerly employed by Community Hospitals of Central California ("Community Hospitals") as the manager of the skilled nursing department. The complaint alleges Community Hospitals of Central California dba Community Medical Centers Employee Benefit Plan (hereinafter, the "Plan") is an employee benefit plan as defined by ERISA sponsored by Community Hospitals. As the court has previously noted, Community Hospitals is the Plan administrator, and Sun Life is the Plan's third-party insurer and claims administrator. It is the court's understanding that Sun Life has complete authority for claims review and to accept or reject claims applications.

Plaintiff became a participant in Community Hospitals' group disability insurance program on January 1, 1999. Plaintiff paid an extra premium so as to be entitled to enhanced disability benefits. The FAC alleges that Plaintiff was diagnosed in September 2001 as suffering from multiple myeloma, a cancer affecting the body's antibody-producing plasma cells. Multiple myeloma results in the production of plasma cell tumors that are usually located in bone where they tend to cause bone and joint pain, and loss or abnormality of bone structure. The FAC alleges Plaintiff suffered pain in all her joints and "experienced symptoms of swelling and generalized weakness and fatigue." FAC at ¶ 11.

Multiple Myeloma is a cancer that is treatable, but not curable. Plaintiff was informed that patients with multiple myeloma survive for periods of time ranging from two to five years. The complaint alleges that Plaintiff began to experience "cognitive difficulties as

well as impaired memory secondary to medications that she was required to take for the treatment of her cancer." Plaintiff has been treated by several doctors including an oncologist a physiatrist and an internist. Plaintiff has been receiving daily chemotherapy since 2004. Plaintiff continued to work in her position as nurse manager until August 15, 2006, at which time she left employment and did not return. Plaintiff filed for disability under the Plan on January 30, 2007, alleging she was disabled as of August 16, 2006. In her claim for disability benefits, Plaintiff stated she suffered from fatigue, chronic bone and joint pain requiring continuous pain medication, peripheral neuropathy in her feet and cognitive impairment, apparently due to the effects of cancer chemotherapy drugs she was receiving.

Plaintiff executed an "Authorization for Release and Disclosure of Health Related Information" on January 30, 2007 (the "Release"). The Release authorized Sun Life to access the entirety of Plaintiff's medical records from any physician or healthcare provider without limitation as to dates of the records in question. In her petition to augment the record, Plaintiff cites a number of entries in Sun Life's record of telephone communications with Plaintiff that indicate Sun Life informed Plaintiff that they were in the process of retrieving medical records from Dr.'s Jones and Wittlinger and that Plaintiff had contacted those physician offices in order to facilitate the process of provision of the records.

On July 2, 2007, Sun Life informed Plaintiff of Sun Life's preliminary determination that Plaintiff was not entitled to disability benefits (the "July 2 Letter") because it had been determined that Plaintiff was not physically disabled at the time she applied for disability. Disability, for purposes of qualification for long term disability benefits under the Plan requires that the plan member be unable to perform the material and substantial duties of his/her own occupation during the entirety of a 180-day elimination period that begins to run as of the day following the last day of work. In Plaintiff's case, Sun Life determined that the elimination period ran from August 16, 2006 through November 13, 2006. In its July 2 Letter, Sun Life summarized its findings as follows:

> After careful consideration of the available medical documentation and all other information in your file, we have concluded that, although you have a history of multiple myeloma dating back to September 2001, the medical

> evidence does not support a marked change in your condition prior to August 16, 2006 that would have caused a change in your functional status as of August 16, 2006. Additionally, there is no indication immediately before, during or after your date of disability (August 16, 2006) that indicates any worsening of reported symptoms, clinical findings or diagnostic values. Overall, the medical documentation substantiates that your multiple myeloma has been stable and that good control of the disease is being maintained. Additionally, it appears that you are tolerating therapy well. Furthermore, the restrictions and limitations provided by Dr. Wittlinger (consistent with less than full time sedentary capacity) are not supported by his own medical documentation for the reasons outlined above.

McQuillan Declaration, Doc. # 22, Exh. "C." The July 2 Letter reviewed the medical record information that was used in formulating Sun Life's conclusion and informed Plaintiff that the record had been reviewed by their medical consultant and had been submitted for "independent peer review" by a Dr. Andrew Schneider, M.D. The July 2 Letter informed Plaintiff of her opportunity to administratively appeal and of her right to "submit written comments, documents, records or other information relating to [Plaintiff's] claim for benefits, and [to] request free of charge copies of all documents, records, and other information relevant to your claim for benefits." Id.

Plaintiff timely filed an administrative appeal and submitted a letter on August 7, 2007, (the "August 7 Letter") addressing the matters raised by the Sun Life's July 2 Letter. See Doc# 22, Exh. "D". Plaintiff's August 7 Letter references a letter from Dr Wittlinger, M.D. as an enclosure, but the letter from Dr. Wittlinger does not appear to have been included in the exhibit that was provided to the court. Plaintiff's August 7 Letter states, *inter alia*, that the physician's notes reflecting the stability of Plaintiff's condition refer to stability within the context of Plaintiff's underlying condition of continuing pain requiring continuous pain management, peripheral neuropathy and fatigue. Plaintiff's August 7 Letter does not appear to mention cognitive impairment.

Plaintiff was informed by Sun Life on November 8, 2007, (the "November 8 Letter") that her appeal had been denied and that Plaintiff had exhausted all administrative remedies. See Exhibit "I" to McQuillan Dec., Doc. # 22. Sun Life's final denial was based on essentially the same grounds as the preliminary denial. Sun Life's November 8 Letter informed Plaintiff that her medical record had been reviewed by a Dr. Lodovico

Baldacci,MD, who opined there was no evidence of change in Plaintiff's medical condition that was evident in the medical record at or near the time Plaintiff discontinued her work that was sufficient to indicate medical disability. The final denial letter also informed Plaintiff that Dr. Baldacci had reviewed the medical records of Dr. Wittinger regarding cognitive impairment and had concluded there was no evidence in the medical record of significant cognitive impairment.

The instant petition to augment the record was filed on February 2, 2009. Sun Life filed its opposition on February 16, 2009, and Plaintiff filed her reply on February 23, 2009. On February 25, 2009, the court vacated the hearing date of March 2, 2009, for Plaintiff's petition to augment the record and took the matter under submission as of that date.

**LEGAL STANDARD**

The default standard for the judicial review of benefits decisions by plan administrators in ERISA cases is *de novo* unless the plan unambiguously retains discretion in the plan administrator. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 105 (1989). The parties in this case do not dispute that the proper standard for review is *de novo*. Under *de novo* review the district court simply determines whether the plan administrator correctly or incorrectly denied benefits. Opeta v. Northwest Airlines Pension Plan, 484 F.3d 1211, 1217 (9th Cir. 2007). "Where there is a sufficiently developed record before the plan administrator the court should not review document not submitted to the plan administrator prior to its decision." Mongeluzo v. Baxter Travenol Long Term Disability, 46 F.3d 938, 943 (9th Cir. 1995). However, a district court employing *de novo* review of a denial of benefits under ERISA may allow evidence beyond what was present to the plan administrator where "that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." Id. at 943-944.

Where an ERISA claim is to be decided by a district court using the *de novo* standard of review, the court should not consider evidence that was not considered by the plan administrator simply because the evidence exists. Mongeluzo, 46 F.3d at 944. Rather, court's discretion to consider evidence that was not before the plan administrator at the time

of the decision is to be exercised only in those situations where the "additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision. Id. Thus the consideration of evidence that was not in the administrative record at the time the claim was denied is only warranted under unusual circumstances. Opeta, 484 F.3d at 1217. In Opeta, the Ninth Circuit set forth a "non-exhaustive list of "exceptional circumstances where introduction of evidence beyond the administrative record could be considered necessary." Id. among the reasons listed are (1) "claims that require consideration of complex medical questions or issues regarding the credibility of medical experts;" (2) "instances where the payor and the administrator are the same entity and the court is concerned about impartiality;" and (3) "circumstances in which there is additional evidence that the claimant could not have presented in the administrative process." Id (citing Quesinberry v. Life Ins. Co. Of N. Am., 987 F.2d 1017, 1027 (4th Cir. 1993).

**DISCUSSION**

Plaintiff requests that the administrative record be augmented to include her medical records from the time of her diagnosis in 2001 through January, 2006, declarations from her treating physicians, Drs. Wittlinger and Jones, and declarations from the medical director of the Skilled Nursing Unit and a co-worker. Plaintiff also request that a declaration by Janice Bowman, a worker in Community Hospital's Human Resources Department be added to the record. Plaintiff also requests that the administrative record be augmented by her own declaration. The court will consider these in turn.

**I. Medical Records from 2001 through January 2006**

At the outset, it is important to emphasize that the focus of the court's attention when it considers Plaintiff's request to augment the record, is on what additional materials, if any, are necessary to conduct an adequate *de novo* review of the administrator's decision. Id. With this as the focus, the court need not confront the esoteric question of what information was actually "before" the claims administrator and whether the administrative record consists of all the information that was "before" the administrator, or just the information the administrator chose to consider. Rather, the court need only determine whether the

information Plaintiff requests the court take into consideration is necessary for *de novo* review of the administrator's decision.

Stated this way, the court's decision regarding Plaintiff's request to augment the administrative record with her medical records dating from her diagnosis in 2001 is reduced to the simple question of whether these records are necessary for the court's determination. Plainly, the answer is "yes." Plaintiff's challenge to Sun Life's denial is based, in part, on the contention that Sun Life misinterpreted medical record entries in 2006 by reasoning that the notation of a "stable" medical condition at the time Plaintiff ceased working means she was free of debilitating symptoms at that time. Plaintiff contends that an examination of medical records from earlier in the course of her disease will show that the "stability" noted in medical record entries made in 2006 must be interpreted in light of prior records that establish a baseline of debilitating symptoms.

Plaintiff's challenge to Sun Life's interpretation of her medical condition at the time she discontinued work implicates the first of the factors listed in Opeta; that is, the credibility of medical experts. In order to resolve the credibility issue, the court will need to review relevant portions of Plaintiff's earlier medical records to make this determination whether Sun Life provided its experts with all the medical records relevant to the decision the experts were called upon to make.

Defendants' argument that augmentation with Plaintiff's earlier medical records should not be allowed because Plaintiff had the opportunity to bring those records to the attention of the claims administrator is unavailing. The crux of Plaintiff's argument is that Sun Life, by limiting the scope of the medical record it considered, produced an inaccurate and distorted picture of her medical condition at the time she discontinued work so as to favor Sun Life's determination that Plaintiff was not disabled throughout the exclusion period. It is well established that, where a claimant alleges the scope of the medical record under consideration by the administrator is narrowed or manipulated so as to support the administrator's denial of benefits, the court does not abuse its discretion by considering excluded portions of the medical record in order to make a *de novo* determination of the

administrator's decision. See Friedrich v. Intel Corp., 181 F.3d 1105, 1111 (9th Cir. 1998); Hicklin v. Hartford Life & Accident Ins., 2007 WL 4729856 at *13 (C.D. Cal. 2007).

Further, there is nothing in Sun Life's letters to Plaintiff or in the language of the plan that suggests that a claimant has any obligation with regard to the provision of medical records other than to make them available to Sun Life by executing a release. The portion of the Plan that is included at Exhibit "N" to the McQuillan Declaration, Doc. # 23, states that a "proof of claim" consists of the claimant's statement of:

- what the disability is;
- the date the disability occurred; and
- the cause of the disability.

The Plain also states that the "Proof of Claim includes, but is not limited to, Hospital Records, Physician records; Physician records; Psychiatric records; X-rays, narrative reports, or other diagnostic testing materials as required. [¶] Sun Life may require as part of the Proof authorizations to obtain medical and non-medical information." Doc. # 22, Exh. "N" at ¶ 2. Both Sun Life's July 2 and November 8 Letters speak of the review of Plaintiff's medical record that was undertaken without giving any hint as to the time frame of the records that were actually reviewed and without suggesting that it is up to the claimant to somehow bring medical records that are already accessible to the administrator to the administrator's attention.

The court must conclude that there is no basis to hold that, once the claimant has released the entirety of her medical record to the administrator, that it is up to the claimant to sift through the record herself to see that relevant records are reviewed. ERISA places upon the plan administrator as fiduciary, the duty to conduct "a full and fair review." 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1(g)(1), (h)(2); Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 871 (9th Cir. 2008). The court construes this to mean that, while the Plan places on the claimant the duty to provide the required releases and statements, it is the administrator's duty to examine all relevant information that is made available in the process of reaching a decision.

Where, as here, the administrator's discharge of its duty to provide full and fair

review is challenged under the *de novo* standard of review, the court is justified in reviewing the information that was made available to the administrator, but that was not included in the administrative record, in order to resolve the question of whether the administrator discharged its duty to provide all relevant information to the experts whose opinion forms the basis of the decision to deny benefits.

**II. Declarations from Drs. Wittlinger and Jones**

Dr. Jones is/was Plaintiff's primary care physician at the time of Plaintiff's diagnosis. Plaintiff seeks to augment the record with Dr. Jones' declaration for the apparent purpose of recounting the symptoms Plaintiff reported in 2001 that prompted further testing which lead to the diagnosis of multiple myeloma. Dr. Jones' declaration is also offered for the purpose of stating Dr. Jones' opinion that Plaintiff suffered from symptoms of chronic fatigue, chronic pain, neuropathy, localized paresthesia and shortness of breath that were severe enough that it would not have been unreasonable, in Dr. Jones' opinion for Plaintiff to have requested disability in 2002 or 2003.

As to the Declaration of Dr. Jones, the court does not see that any of the reasons for consideration of information beyond the administrative record that were mentioned in Opeta applies. Pursuant to the court's decision regarding Plaintiff' medical record, any medical records within the scope of the release Plaintiff executed are available to plaintiff so that Plaintiff may support her contentions with regard to her baseline condition between 2001 and 2006 with medical records from Dr. Jones or any other provider. It appears to the court that the information offered by Dr. Jones' declaration merely restates what is present in the medical record. Dr. Jones' declaration does not resolve any issue of credibility of medical expert testimony nor does it appear there is any reason that a declaration by Dr. Jones could not have been made available at during the administrative review process. The court finds that it does not need the declaration of Dr. Jones in order to conduct a *de novo* review of Sun Life's decision.

Dr. Wittlinger is/was the oncologist to whom Plaintiff was referred for ongoing treatment of her multiple myeloma. Plaintiff seeks to augment the medical record with the

declaration of Dr. Wittlinger in order to, among other things, clarify that his use of the description "stable" in his progress notes from 2006 is intended to convey a meaning of "unchanged since the last visit" and that the word "asymptomatic" was intended to convey the lack of any acute deterioration since the last visit. Dr. Wittlinger also states in his declaration that he never expressed any opinion as to Plaintiff's "ability to continue working and I never intended my records during that time period to address the issue of whether [Plaintiff was disabled]." Doc. # 18 at ¶ 7. Dr. Wittlinger opined that, by August 2006, the drugs Plaintiff was taking and the symptoms associated with her disease had progressed to the point that they severely impacted Plaintiff's ability to work.

Plaintiff's request to augment the record with the declaration of Dr. Wittlinger is different from the request to augment the record with Dr. Jones' declaration in one respect. Sun Life's letters to Plaintiff on both July 2 and November 8 opine that "the restrictions and limitations provide by Dr Wittlinger are not supported by his own documentation . . . ." Exh. "B" at 12. Sun Life's letters suggest that the denial of benefits is based, at least in part, on Dr. Wittlinger's notations during the exclusion period that Plaintiff was "stable" and "asymptomatic." Plaintiff alleges that Sun Life's interpretation of these terms is erroneous and self-serving. The court agrees there is some ambiguity as to how the terms "Stable" and "asymptomatic" could or should be interpreted and the court is not in a position to resolve the ambiguity on the basis of the administrative record alone. As with her request to augment the administrative record with her earlier medical records, Plainitff's request to augment the administrative record with the declaration of Dr. Wittlinger implicates the issue of the credibility of medical expert testimony. The court finds that the declaration of Dr. Wittlinger is necessary to the court's *de novo* review for the very limited purpose of resolving question of whether Sun Life's assessment of Dr. Wittlinger's comments in the medical record are correct in light of the entirety of the medical record. Specifically, the court, lacking any basis for the assessment of how the terms "stable" and "asymptomatic" should be interpreted, finds it necessary to refer to Dr. Wittlinger's declaration of what he meant when he used those terms. The court will grant Plaintiff's request to augment the administrative record to the

limited extent it will consider paragraphs 4, 5, and 7 only of Dr. Wittlinger's declaration as set forth in Document # 18.

**III.  Declarations of Dr. Asha Sidhu, M.D. and Terri Lutz**

Plaintiff seeks to augment the administrative record with declarations by Dr. Sidhu, the medical director of the Skilled Nursing Unit that Plaintiff managed, and Terri Lutz, the person who supervised Plaintiff during the time prior to Plaintiff's discontinuation of work. The declarations are offered for the apparent purpose of refuting Sun Life's classification of Plaintiff's work activity requirements as "sedentary."

In their July 2 Letter, Sun Life described Plaintiff's job as corresponding to the DOT designation "Director, Nursing Service," a designation that is described as requiring a sedentary level of exertion and not requiring the exertion of more than 10 pounds of force. Sun Life obtained a "peer review" report from Dr. Balducci, which opined that Plaintiff was not disabled from preforming full time *sedentary work* but she was disabled throughout the exclusion period from performing full time *light duty work*. See Doc. # 22, Exh. "E" at ¶¶ 10, 11.  The court notes that Sun Life subsequently had an occupational review conducted by Robert Violetta which corrected Sun Life's prior description of the exertion level required for Plaintiff's work from nursing director at a sedentary level to a supervisory/coordinator job at a medium level of exertion.

While the court is aware of the centrality of the accuracy of Sun Life's characterization of the activity level required for Plaintiff's job, the court finds there is an adequate record to allow for *de novo* review of Sun Life's determination.  Basically, Plaintiff registered her objection to Sun Life's initial characterization of the level of exertion required in the discharge of duties as a nursing unit manager, Sun Life engaged in additional occupational review, and then discounted the findings of the occupational review based, apparently, on a conversation between Plaintiff and an interviewer for Sun Life wherein Plaintiff allegedly stated she did not lift or move patients and self-described her job as sedentary.

The court finds that the controversy between the parties as to the level of activity

required to perform Plaintiff's job is well defined and that the information before the court is sufficient to carry out an adequate *de novo* review of whether Sun Life was correct in determining that Plaintiff carried out her job employing light to sedentary exertion.

**IV. Declaration of Janice Bowman**

Plaintiff seeks to augment the record with the declaration of Janice Bowman, an employee working in Community Hospital's Human Resources Department. In their November 8 Letter, Sun Life stated:

> As a final note, we contacted Janice Bowman at Community Medical Centers yesterday to try to gain additional insight into the circumstances that led to your decision to stop working on August 16, 2006. Ms. Bowman explained that the facility at which you had been working, University Medical Center, is now closed, and that this facility and your department had been merged with the larger Community Medical Center of Fresno. She explained that none of the managers from your former department were still employed by Community Medical Centers. Ms. Bowman also explained that the merger of facilities and departments began in 2006 and was completed in April 2007 (shortly after you accepted the severance agreement). Additionally, Ms. Bowman conveyed her impression, based on her conversations with you, that you chose to stop working because you felt the timing was right, given the merger and your doctors' advice that you should stop working.

Exh "I" at 5. The declaration of Janice Bowman is offered for the purpose of refuting Sun Life's account of the conversation that took place between Bowman and the Sun Life representative. In her declaration Ms. Bowman states:

> I do recall having one telephone conversation with a representative of Sun Life but do not recall specifically with whom it was that I spoke. The note inaccurately summarized my telephone conversation with the Sun Life representative with whom I spoke. I did not tell Morse Doane or any Sun Life representative that Ms. Blackwood stopped working because she felt the "timing was right" nor did I tell any Sun Life representative that her decision to stop working had anything to do with the hospital merger. I would not have ever stated that the merger was a factor in Ms. Blackwood's decision to stop working in August 2006 as the hospital merger was not something that was decided upon until well after August 2006.

Doc. # 16 at 1-2.

It is not clear what role, if any, the conversation between Bowman and Sun Life had on the decision to deny benefits. It appears that the conversation occurred at the very end of the review process and functioned mostly to provide a rationale that Sun Life could cite for Plaintiff's decision to quit work that was not based on her medical condition. At this point,

12

the court understands that Sun Life denied benefits because, in Sun Life's opinion, Plaintiff failed to show that her condition had worsened at, or shortly before, the time she decided to quit working, such that her decision to stop working coincided with a deterioration in her medical condition to a point of disability. The court's role in conducting *de novo* review is to determine if Sun Life's determination that Plaintiff was not disabled from her job during the entirety of the elimination period was correct. At this point, it does not appear that Sun Life's conversation with Bowman figures into that determination.

The court will deny Plaintiff's request to augment the record with respect to the declaration of Janice Bowman subject to the understanding that the conversation between Bowman and the Sun Life representative will not be germane to the court's *de novo* review of Sun Life's decision to deny benefits. The denial will be without prejudice, however, and if the court later determines that the credibility of Sun Life's memorandum is material to an issue the court must determine, Plaintiff may renew her motion in light of facts as they are developed at that time.

**V.    Plaintiff's Own Declaration**

Plaintiff requests that the administrative record be augmented with her own declaration. Plaintiff's declaration is basically a recap of her symptoms over time and, to a great extent, repeats the general allegations set forth in her August 7 Letter. The main difference between Plaintiff's declaration and the August 7 Letter is the attention Plaintiff's declaration gives to the issue of her cognitive impairment. The court finds that Plaintiff's declaration does not fit within any of the reasons for augmentation of the record set forth in Opetta. The information is not necessary for the resolution of any complex medical issues or issues of expert credibility. In addition, and perhaps most persuasively, Sun Life's July 2 Letter stated Sun Life found nothing in the record to substantiate the claim of cognitive impairment. There is no reason why the information Plaintiff now requests the court consider could not have been included in Plaintiff's August 7 Letter. Given that Plaintiff had both cause and opportunity during the administrative appeals process to refute Sun Life's findings regarding Plaintiff's claim of cognitive impairment and failed to do so, Plaintiff may not do

so now. Again, to the extent Plaintiff's medical records predating 2006 may tend to bolster Plaintiff's claim of cognitive impairment, such records are admissible and will be considered by the court.

THEREFORE, in accord with the foregoing discussion, it is hereby ORDERED that:

1. Plaintiff's request to augment the administrative record with medical records from 2001 through 2006 is GRANTED to the extent the medical records to be considered are within the scope of the release executed by Plaintiff.
2. Plaintiff's request to augment the administrative record with the declaration of Dr. Helen Jones, M.D. is DENIED.
3. Plaintiff's request to augment the administrative record with the declaration of Dr. Peter Wittlinger, M.D. is GRANTED as to paragraphs paragraphs 4, 5, and 7 *only* of Dr. Wittlinger's declaration as set forth in Document # 18.
4. Plaintiff's request to augment the administrative record with the declarations of Asha Pritpal Sidhu, M.D. and Terri Lutz is DENIED.
5. Plaintiff's request to augment the administrative record with the declaration of Janice Bowman is DENIED without prejudice.
6. Plaintiff's request to augment the administrative record with her own declaration is DENIED.

IT IS SO ORDERED.

Dated: **March 10, 2009**              **/s/ Anthony W. Ishii**
                                        CHIEF UNITED STATES DISTRICT JUDGE